NOT RECOMMENDED FOR PUBLICATION

File Name: 24a0490n.06

Case No. 24-3067

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 04, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff - Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| | ) | |
| CAMERON SHEPHERD, | ) | O P I N I O N |
|     Defendant - Appellant. | ) | |

BEFORE: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.** Cameron Shepherd was convicted at trial of conspiracy to make false statements during the purchase of a firearm and six counts of aiding and abetting the making of false statements during the purchase of a firearm. He appeals his conviction, arguing that the evidence presented at trial was insufficient to support the jury's verdict. We **AFFIRM**.

**I.**

In March 2019, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) learned that Miasia McElroy purchased multiple firearms from Dave's Pistols, a licensed firearms dealer in Uniontown, Ohio.[1] More specifically, McElroy bought 21 handguns—all from Dave's Pistols—between November 2017 and March 2019. Eight of those handguns were later recovered by law

---

[1] Federal law requires licensed firearms dealers to alert ATF if someone purchases multiple pistols or revolvers within a five-day period. *See* 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126a (2008).

enforcement officers in southern California. This led ATF to believe that McElroy was trafficking firearms.

ATF agents reviewed the paperwork from Dave's Pistols related to the sale of the handguns. One of the documents—ATF Form 4473—must be completed before the purchase of any firearm. Form 4473 requests identifying information about the purchaser and asks several questions to determine whether the purchaser is prohibited from purchasing a firearm. One question specifically asks whether the purchaser is the "actual buyer" of the firearm. To purchase the 21 handguns at Dave's Pistols, McElroy completed six Form 4473s—one for each visit. On all six forms, McElroy stated that she was the actual buyer of the firearms.

McElroy admitted at trial that she did not purchase the firearms for herself; she bought them for Shepherd as a "favor." McElroy and Shephard began a romantic relationship a few years before the firearms purchases. In 2015, Shepherd was arrested for domestic violence after he pointed a gun at McElroy and threatened to kill her. They eventually reconciled, but because of Shepherd's criminal history, he was barred from purchasing firearms. So, from 2017 to 2019, Shepherd asked McElroy to purchase handguns on his behalf. ATF refers to this type of arrangement as a "straw purchase."

According to McElroy, the trips to Dave's Pistols generally followed the same script. Shepherd flew to Ohio from either California or Las Vegas. He sometimes asked McElroy to pick him up at the airport, and he typically spent the night at her apartment. On the day of the firearms purchase, they would drive to Dave's Pistols together. Shepherd would tell McElroy which handguns to buy via text message, and he taught her what to say to the store's owner. Shepherd would then give McElroy money to purchase the firearms. He also paid her between $50 and $80 per trip in exchange for her assistance. Shepherd would remain in the car while McElroy went into Dave's Pistols. McElroy would pick out the handguns, fill out Form 4473, and complete the purchase. On all six Form 4473s, McElroy falsely claimed that she was the actual buyer of the

firearms. After the sale, Shepherd would take possession of the firearms, and McElroy never saw them again.

Shepherd was charged with one count of conspiracy to make false statements during the purchase of firearms, in violation of 18 U.S.C. § 371, and six counts of aiding and abetting the making of false statements during the purchase of firearms, in violation of 18 U.S.C. §§ 2, 922(a)(6). McElroy was also charged, but she entered into a plea agreement with the government and agreed to testify at Shepherd's trial. After a two-day trial, Shepherd was convicted on all counts. The district court sentenced him to 48 months in prison, and Shepherd timely appealed.

**II.**

Shepherd raises one issue on appeal: whether the evidence presented at trial was sufficient to sustain the jury's verdict. He claims that "there is no evidence tying [him] to the purchase of the firearms" beyond McElroy's testimony at trial. In his view, "[t]he government's case was built entirely upon the platform of McElroy's uncorroborated allegations."

Because Shepherd moved for a judgment of acquittal at trial, *see* Fed. R. Crim. P. 29(a), we review his challenge to the sufficiency of the evidence de novo. *United States v. Bauer*, 82 F.4th 522, 528 (6th Cir. 2023). We must "determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mathis*, 738 F.3d 719, 735 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The defendant carries a heavy burden, as "there is a strong presumption in favor of sustaining a jury conviction." *United States v. Charles*, 138 F.3d 257, 265 (6th Cir. 1998) (internal quotation marks omitted). In our review, "we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). Circumstantial evidence alone may sustain a conviction. *United States v. Davis*, 306 F.3d 398, 408

(6th Cir. 2002). It is also "well settled" that the "uncorroborated testimony of an accomplice may support a conviction in federal court." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

The jury convicted Shepherd of (1) conspiracy to commit and (2) aiding and abetting the substantive offense of making a false statement during the purchase of a firearm. *See* 18 U.S.C. §§ 2, 371, 922(a)(6). To establish a conspiracy, "the government must prove the existence of an agreement to act together in committing an offense and an overt act in furtherance of the conspiracy." *Mathis*, 738 F.3d at 735. To establish that Shepherd aided and abetted an offense, the government must prove that there was "(1) an act by [Shepherd] that contributes to the commission of the crime, and (2) an intention to aid in the commission of the crime." *Davis*, 306 F.3d at 412. To prove the substantive offense of making a false statement during the purchase of a firearm under § 922(a)(6), the government must show that "(1) [McElroy] knowingly made (2) a false or fictitious oral or written statement that was (3) material to the lawfulness of the sale or disposition of a firearm, and was (4) intended to deceive or likely to deceive a firearms dealer." *United States v. Harvey*, 653 F.3d 388, 393 (6th Cir. 2011). There is no dispute that a purchaser who falsely claims to be the actual buyer of a firearm on Form 4473 violates § 922(a)(6). *See Abramski v. United States*, 573 U.S. 169, 189 (2014) ("We can hardly think of a misrepresentation any more material to a sale's legality."); *United States v. McKenzie*, 33 F.4th 343, 345 (6th Cir. 2022) ("Federal law makes it a crime for so-called 'straw purchasers' to tell licensed firearms dealers that they are buying a firearm for themselves when, in fact, they are buying it for someone else.").

The government presented sufficient evidence that Shepherd conspired with McElroy to make "straw purchases" of the handguns. McElroy testified that Shepherd asked her if she would be "interested in purchasing firearms," and McElroy agreed to help. McElroy did not know why Shepherd wanted her to purchase the handguns on his behalf, but she assumed that Shepherd could not buy them himself because of his criminal record. During a recorded phone call between Shepherd and McElroy, Shepherd confirmed that "we legitly paid for" the firearms using "straight

cash." When McElroy told Shepherd that law enforcement officers sought information about the firearms, Shepherd said that McElroy "could even make up a story like . . . some of them were stolen," but later noted that "the best story to stick with is that you [sold] them." Moreover, as described below, Shepherd and McElroy committed several overt acts in furtherance of the conspiracy, including the actual purchase of the firearms. Because this evidence "can reasonably be interpreted as participation in [a] common plan," we are in no position to second-guess the jury's conclusion that Shepherd and McElroy conspired to conceal the actual buyer of the firearms. *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (quoting *United States v. Salgado*, 250 F.3d 438, 447 (6th Cir. 2001)).

McElroy's testimony also demonstrated that Shepherd aided and abetted her unlawful purchase of the firearms. McElroy stated that Shepherd told her to buy the handguns at Dave's Pistols. Shepherd sent McElroy text messages listing the specific make and model of the firearms that Shepherd wanted her to buy. Shepherd also helped her "understand how to speak to the person at the gun store." For each visit to the store, Shepherd gave McElroy between $1,000 and $2,000 in cash to purchase the firearms. At some point during the string of purchases, Shepherd began to pay McElroy for each visit. Shepherd and McElroy drove to Dave's Pistols together, frequently using Shepherd's car. While Shepherd waited in the car, McElroy purchased the firearms—after providing false information on Form 4473—using Shepherd's money. After McElroy completed each purchase, Shepherd took possession of the handguns.

The government provided additional evidence that corroborated McElroy's testimony. ATF Special Agent Larry Ward testified that the firearms McElroy purchased "weren't very high-end," which he found to be indicative of firearms trafficking. David White, owner of the eponymous Dave's Pistols, agreed that McElroy purchased "cheaper guns." On at least one occasion, White saw McElroy exit the passenger side of the car while someone else was in the driver's seat. White further testified that he had an "eerie feeling" during McElroy's last visit because unlike most customers, she decided to purchase the handguns without holding them or

looking at other options. The government also introduced the six Form 4473s that McElroy filled out during her six visits to Dave's Pistols and ATF "trace reports" showing that eight firearms purchased by McElroy were later recovered in California.[2] Finally, the government played the recorded phone conversation between Shepherd and McElroy in which Shepherd (1) stated that the firearms were "not around here no more," (2) admitted that he sold the firearms, and (3) debated the best "story" to tell law enforcement. In short, a rational trier of fact could readily conclude that Shepherd aided and abetted McElroy's "straw purchases" of the firearms on his behalf.

### III.

We **AFFIRM** the district court's judgment.

---

[2] One of the firearms was recovered in Los Angeles only 25 days after McElroy purchased it in Ohio.