NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0370n.06

No. 24-5782

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Jul 25, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| PATRICK DILLON BUTLER, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: WHITE, LARSEN, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Patrick Butler (Butler) appeals the denial of his motion for a judgment of acquittal, or a new trial, following his convictions by a jury of being a felon in possession of a firearm, possessing methamphetamine with intent to distribute, and possessing a firearm in furtherance of a drug-trafficking crime. We affirm.

**I.**

On December 11, 2021, officers pursued a Jeep that matched the description investigators gave them of the car that Butler, who had active warrants for his arrest, was driving.

Butler tried to evade the police. After a chase, Butler finally stopped when his vehicle hit one of the police cars. Officers arrested Butler and then searched him. They found 14 empty plastic bags, a container holding both pills and two plastic bags of methamphetamine, a syringe, and $352 in cash. One of the officers asked Butler whether there were any illegal items in the car, and Butler said there were scales.

The officers then searched the car. They found a revolver in the glovebox, loaded with three rounds of ammunition, with its handle facing the passenger-side door. They also found a plastic bag in the cup holder of the front seat center console, similar to the ones they found on Butler's person, containing methamphetamine. The total weight of the methamphetamine found on Butler's person and in the vehicle was 2.26 grams. Butler told the officers, "I borrowed that ride because they said they looking for my truck. . . . That's Dad's ride." (Exhibit 19, Sims Body Camera Footage, 0:01-10).

Nine days later, Butler called his grandmother, Evelyn Butler, from jail. The conversation, in relevant part, proceeded as follows:

> Evelyn: "And see we thought your car was stolen, because . . . ." (Exhibit 12, Jailhouse Phone Call, 03:27-30).
>
> Butler: "What am I going to do? Come in there and wake y'all up at three o'clock in the morning?" (*Id.*, 03:33-36).
>
> Evelyn: "Well we thought it happened, uh, Sunday night, not Friday night." (*Id.*, 03:37-42).
>
> Butler: "I went to jail the next day after I got it. . . . So y'all reported it stolen?" (*Id.*, 03:45-53).
>
> Evelyn: "Yeah, we reported it stolen 'cause we thought it disappeared Sunday night." (*Id.*, 03:53-57).
>
> Evelyn: "We found out you was in the car, when they got him, when they got it." (*Id.*, 04:38-43).
>
> Butler: "Yeah, well . . . tell them I was in Harry's car. Don't say it was my car." (*Id.*, 04:43-48).
>
> Butler: "Why ain't dad done something about it? Why ain't he done nothing about it?" (*Id.*, 07:57-8:00).
>
> Evelyn: "He ain't going to do a damn thing." (*Id.*, 08:01-03).
>
> Butler: "Y'all need to disown him. Tell him don't be around my goddamn Jeep.
>
> . . . Y'all need . . . to do something with him. That's his Jeep. I tell you what, everything in it was his too . . . ." (*Id.*, 08:04-16).

On January 13, 2022, Butler sent someone a message from jail that said, "Oh, yeah, if you go, get the stuff out of my truck. You can have that air compressor." (R. 84, Trial Transcript, PID 559–60).

A grand jury indicted Butler with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 7); possessing equipment which may be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6) (Count 3), possessing a firearm in furtherance of Count 2, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4); possessing a firearm in furtherance of Count 3, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5); and conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (Count 6).

The district court dismissed Counts 3, 5, 6, and 7, and Butler proceeded to trial on Counts 1, 2, and 4. At trial, Butler sought to introduce testimony from his mother regarding the quantity of drugs she had seen him use at one time. He argued that this testimony was relevant to whether the methamphetamine the police found was intended for personal use or distribution. The district court sustained the government's objection to the testimony on the basis that the drug use Butler's mother had witnessed occurred in 2017, which was "too far removed in time." (R. 84, PID 682–83). The jury found Butler guilty of all three charges.

Butler filed a motion for a judgment of acquittal, or in the alternative, for a new trial. He argued that the evidence was insufficient to support his convictions and that the court had erred in ruling his mother's testimony inadmissible. The district court denied Butler's motion, and this appeal followed.

**II.**

Butler asserts that the evidence presented at trial was insufficient to support his convictions. We review sufficiency-of-evidence challenges de novo. *United States v. Bauer*, 82 F.4th 522, 528 (6th Cir. 2023). A conviction rests on sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In conducting this inquiry, this court considers all evidence "in the light most favorable to the prosecution." *Bauer*, 82 F.4th at 528–29.

**A.**

For the jury to find Butler guilty of being a felon in possession of a firearm, the government had to prove beyond a reasonable doubt that (1) Butler was a convicted felon and knew of his felon status, (2) Butler knowingly possessed a firearm, and (3) the firearm Butler possessed had traveled in interstate commerce. 18 U.S.C. § 922(g)(1); *see United States v. Crump*, 65 F.4th 287, 293 (6th Cir. 2023). Butler stipulated to the first and third elements, so we consider only whether the Government introduced sufficient evidence for the jury to find that Butler "possessed" the firearm the police found in the glovebox.

Actual or constructive possession is sufficient to give rise to criminal liability under 18 U.S.C. § 922(g). *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "Constructive possession exists when a person does not have possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007) (citation omitted). Proof that a person has dominion over the premises where the firearm is located is sufficient to establish constructive possession. *United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009). Our circuit's caselaw does not define "dominion." *Id.* at 944 n.3. But this court has determined that if

a defendant was in nonexclusive possession of premises where illicit contraband was found, it cannot be inferred that he knew the contraband was present and had control of it without other incriminating statements or circumstances. *Id.*

A reasonable juror could have concluded that Butler was in exclusive possession of the Jeep and had dominion over it for some period of time leading up to his arrest. Butler's father purchased the Jeep in April 2021 while Butler was in jail. But there is evidence that Butler took possession of the Jeep after his release from jail in September 2021. Butler's grandmother stated that she did not know how long Butler had been driving the Jeep prior to the events of December 11th. However, during her phone call with Butler after his arrest, she said, "[W]e thought your car was stolen" upon learning that the police had taken the vehicle (Exhibit 12, 03:27-30), and then "[w]e found out you was in the car . . . when they got it" (*id.*, 04:38-43). Butler replied, "Yeah, well . . . tell them I was in Harry's car, don't say it was my car" (*id.*, 04:43-48), which suggests that he was trying to mislead the police as to who had been in possession of the car. He later said, in reference to his father, "Tell him don't be around my goddamn Jeep." (*Id.*, 08:05-08). Additionally, Butler sent a message from jail that said, "Oh, yeah, if you go, get the stuff out of my truck. You can have that air compressor." (R. 84, PID 559–60). An officer testified that there was an air compressor in the backseat of the Jeep when they searched it. Although Butler told police that he "borrowed that ride because they said they looking for [his] truck" (Exhibit 19, 0:01-04), a juror could disbelieve this statement.

Further, the fact that other people had access to the Jeep in the past does not negate the possibility that Butler had exclusive access to it prior to his arrest. Testimony from Butler's grandfather indicated that he had access to the Jeep at some point and had put the gun in the glovebox without telling Butler. But a juror could disbelieve this testimony. And Butler's

grandfather did not specify when he had accessed the Jeep. This case is therefore distinguishable from *Bailey*, 553 F.3d at 946, in which this court found insufficient evidence of possession when the defendant borrowed the car in which the firearm was found and other people had been in the car on the night the defendant was arrested and in the days before.

The evidence was sufficient for a rational juror to conclude that Butler had dominion over the Jeep and therefore constructively possessed the firearm found in it. Accordingly, the district court did not err in denying Butler's motion for a judgment of acquittal on this count.

**B.**

A conviction for possession of a controlled substance with intent to distribute requires proof that the defendant "(1) knowingly, (2) possessed a controlled substance, (3) with intent to distribute it." *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010) (citation omitted). The only element in dispute is whether Butler intended to distribute the methamphetamine that he possessed. "[I]ntent to distribute can be inferred from the quantity of a controlled substance possessed by the defendant and other evidence indicating the substance possessed was not intended for personal use." *United States v. Garth*, 965 F.3d 493, 496 (6th Cir. 2020). Butler contends that the government did not prove that he possessed the methamphetamine the police found with the intent to distribute it, rather than for personal use.

The total weight of the methamphetamine found on Butler's person and in the vehicle, divided among three bags, was 2.26 grams. Rodney Weaver, an investigating officer, testified that the typical amount of methamphetamine that drug buyers purchase is 3.5 grams (an "8-ball"). He also stated that it is common for people distributing narcotics to do so to support their own narcotics habit and that those people typically buy an 8-ball of methamphetamine, break it down into smaller amounts for distribution, and keep part of it for their own use. He further testified that

having methamphetamine in multiple plastic bags, multiple empty plastic bags, a digital scale, large amounts of cash, and/or a firearm, all of which Butler had when the police stopped him, is indicative of drug-dealing.

Butler contends that although a jury could conclude that he engaged in drug-dealing at some point, the evidence did not establish that he intended to distribute the specific units of methamphetamine the police found when they stopped him. But the fact that this methamphetamine was split among three bags, combined with the other evidence described, allowed a rational juror to find that Butler intended to distribute it. Thus, the district court did not err in declining to acquit Butler on this count.

## C.

For a defendant to be convicted of possessing a firearm in furtherance of a drug-trafficking crime, "the weapon must promote or facilitate the crime." *United States v. Kelsor*, 665 F.3d 684, 692 (6th Cir. 2011) (citation omitted). Thus, "whether a defendant possesses a firearm 'in furtherance of' a crime depends on the defendant's intent in possessing the gun." *United States v. Maya*, 966 F.3d 493, 500 (6th Cir. 2020). "If, for example, a drug dealer owns a gun to protect the drugs, the proceeds of drug sales, or the dealer himself, that possession-for-protection purpose will facilitate the crime." *Id.* (quotation marks and citation omitted). But "possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Butler asserts that the government did not prove there was a connection between the firearm found in the glovebox and his drug-trafficking activities.

In determining whether there was sufficient evidence that a defendant possessed a firearm in furtherance of a drug-trafficking crime, this court considers "whether the gun was strategically

located so that it [was] quickly and easily available for use, whether it was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Maya*, 966 F.3d at 501 (citation and internal quotation marks omitted). In this case, the gun was located in the glovebox and therefore easily accessible, was loaded, and was possessed illegally. *See id.* ("Many cases have involved a felon barred from possessing a firearm, and the illegality of that possession helped show more than an 'innocent' purpose."). Additionally, a law enforcement agent testified that "[m]any [drug dealers] carry firearms for protection . . . in the event they may be robbed from another dealer or another user, or someone who might be wanting to rob them of their drugs or their cash." (R. 84, PID 611).

From this evidence, a rational juror could conclude that Butler possessed the firearm in furtherance of drug trafficking. Accordingly, the district court properly denied Butler's motion for a judgment of acquittal on this count.

### III.

Butler next argues that the district court erred in denying his motion for a new trial on the charges of possession with intent to distribute and possession of a firearm in furtherance of a drug-trafficking crime. He asserts that he is entitled to a new trial because the district court erroneously excluded his mother's testimony regarding the quantities of drugs she saw him consume in 2017 and that this decision violated his Sixth Amendment right to present a complete defense.

We review a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Soto*, 794 F.3d 635, 645 (6th Cir. 2015). "Where a defendant attacks an evidentiary ruling as violating the Sixth Amendment, review of the legal aspects of the constitutional violation is de novo." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014).

To establish a Sixth Amendment violation, a defendant must demonstrate that (1) the exclusion was "arbitrary or . . . disproportionate to the interest that the court sought to serve" and (2) the excluded evidence "would have create[d] a reasonable doubt about the defendant's guilt that would not have existed based on the admitted evidence alone." *United States v. Reynolds*, 86 F.4th 332, 351 (6th Cir. 2023) (citations and internal quotation marks omitted).

"A defendant typically cannot make this showing when challenging 'well-established rules of evidence,' such as those that bar irrelevant or prejudicial information." *Id.* (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)). "These rules allow courts to exclude evidence of innocence that is . . . remote to the crime," as the district court did in this case. *Id.* (citation and internal quotation marks omitted). Further, the proposed testimony would not have created a reasonable doubt. As explained, there was extensive evidence that Butler intended to distribute the methamphetamine. Additionally, the government's witnesses did not contradict the theory that 2.26 grams of methamphetamine could be a personal-use quantity. Weaver testified that drug dealers frequently purchase an 8-ball of methamphetamine, which consists of 3.5 grams, "break that down into smaller amounts," and "keep part of it for themselves to use." (R. 84, PID 606). Therefore, Butler's mother's proposed testimony regarding the quantity of drugs she had seen him use was not necessary for establishing that the quantity of methamphetamine found was compatible with personal use.

For these reasons, the district court did not err in denying Butler's motion for a new trial.

**IV.**

For the reasons set out above, we AFFIRM.